IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                    :        CASE NO. 07-05871
                                          :
RIDEL ALEGRE FERNANDEZ ROSADO :        CHAPTER 7
                                          :
        Debtor                            :
                                          :
_____          :

**OPINION AND ORDER**

This case is before the court upon the Motion to Dismiss filed jointly by Mr. Celedonio Corredera Pablo ("Mr. Corredera"), Dr. Pablo López Báez ("Dr. López"), Emma Teresa Benítez ("Mrs. Benítez) and Dr. Osiris Delgado ("Dr. Delgado") (hereinafter referred collectively as the "Creditors") on April 28, 2009 pursuant to 11 U.S.C. §707(a) of the Bankruptcy Code.  On June 1, 2009, Ridel Alegre Fernández (hereinafter referred to as "Debtor" or "Mr. Alegre") filed his opposition to the motion to dismiss and subsequently, on November 24, 2009, supplemented the same (Docket Nos. 68 & 76). On December 21, 2009, Dr. López, Mrs. Benítez and Dr. Delgado jointly filed their reply to the opposition to the motion to dismiss (Docket No. 80).

An evidentiary hearing was held on June 8, 2010 to determine whether Debtor filed his bankruptcy petition in bad faith (Docket No. 111 ). The evidentiary hearing consisted primarily of the testimony of the four (4) Creditors and of the Debtor. The issues before the court are the following: (i) are the claims included in Debtor's bankruptcy petition "primarily consumer debts" pursuant to 11 U.S.C. §101(8) of the Bankruptcy Code and thus dismissal should have been requested under Section 707(b) of the Bankruptcy Code; (ii) and whether Debtor filed his Chapter 7 bankruptcy petition in bad faith pursuant to 11 U.S.C. §707(a) of the Bankruptcy Code.  For the reasons set forth below the Motion to Dismiss is hereby granted.

Facts and Procedural Background

The facts and procedural background prior to the evidentiary hearing on the motion to dismiss are set forth in the Opinion and Order entered on March 15, 2010. In re Rosado, 2010 WL 1005190

(Bankr. D. P.R. 2010). The same are incorporated herein.

Debtor filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code on October 9, 2007. Creditors were included in Schedule F (Creditors Holding Unsecured Nonpriority Claims) as unsecured, and all debts were labeled of a personal nature. Debtor in Schedule F listed the debts as follows: (i) Don Celedonio Correderra Pablos a personal debt incurred in the year 2005 in the amount of $68,400.00; (ii) Dr. Osiris Delgado a personal debt incurred in the year 2005 in the amount of $25,000.00; (iii) Dr. Pablo Lopez Baez a personal debt incurred in the year 2005 in the amount of $11,000.00; and (iv) Emma Teresa Benitez a personal debt incurred in the year 2006 in the amount of $27,000.00." All of the above referenced unsecured claims were listed by Debtor as not being of a contingent, unliquidated or disputed nature. Debtor on line item 4 of its Statement of Financial Affairs listed the following four (4) state court proceedings for collection of monies: (1) Pablo Lopez Baez, Cristine Wechgeler vs. Ridel Fernandez H/N/C Galeria Ridel K1CD2007-0083; (2) Don Celedonio Corredera Pablos vs. Galeria Ridel, Inc. and Ridel Fernandez KCD2007-0809; (3) Emma Teresa vs. Ridel Fernandez KCD2007-11424; and (4) Dr. Osiris Delgado vs. Ridel Fernandez and Galeria Ridel KCD2007-1759. The 341 meeting of creditors was initially scheduled for November 1, 2007 (Docket No. 4). The meeting of creditors was rescheduled to November 15, 2007 (Docket No. 7 in lead case); and subsequently continued to December 13, 2007 (Docket No. 12 in lead case) and January 10, 2008 (Docket No. 20 in lead case). The deadline to file objections to the discharge and the dischargeability of debts was December 31, 2007 (Docket No. 4 in lead case).

On April 28, 2009 Creditors filed a Motion To Dismiss (Docket No. 55) alleging that Debtor filed its bankruptcy petition in bad faith and should be dismissed pursuant to 11 U.S.C. §707(a) of the Bankruptcy Code. Creditors allege that Debtor's bad faith is based on the following: (i) "...to obtain a discharge of debts incurred as a result of Fernández's fraudulent representations to the Consignors and other similarly situated creditors and as a result of Debtor misappropriating or using without consent money or property belonging to the Consignors and other similarly situated creditors" (Docket No. 55, paragraph 5); (ii) "[t]his cumulative debt of at least $112,000.00 was incurred by Debtor as a direct result of Fernández using artworks that had been given to him on consignment for sale by the Consignors to pay for his own debts and from Fernández using the proceeds of the sales

of artworks given to him by the Consignors to pay for his own debts" (Docket No. 55, paragraph 7); (iii) "Debtor has admitted that title over the artworks given to him on consignment for sale by the Consignors remained in the Consignors. Therefore, the proceeds of the sales of those artworks belonged to the Consignors" (Docket No. 55, paragraph 8); (iv) "Fernández fraudulently or under false pretenses made the Consignors provide him with the artworks on consignment for sale, under the pretense that he would turnover to them the proceeds of the sales of the consigned artworks, less Debtor's rightful part of said proceeds" (Docket No. 55, paragraph 9); and (v) "Debtor has constantly failed to provide the Consignors with the information requested at the meetings of creditors with regards to whom and for what amount were the consigned artworks sold and if they had been paid to him by the respective buyers" (Docket No. 55, paragraph 11).

On May 29, 2009 the court dismissed the case for the reasons set forth in the Creditors' motion to dismiss. On June 1, 2009 Debtor filed a motion for reconsideration of dismissal under Fed. R. Bankr. P. 7055(c) (Docket No. 67). Debtor filed his Answer and Opposition to the Motion to Dismiss on June 1, 2009 (Docket No. 68). Debtor, as part of its Affirmative Defenses in its Opposition to the Motion to Dismiss, argues that there is no good faith filing requirement under 11 U.S.C. §707(a) of the Bankruptcy Code. On June 19, 2009 Creditors filed their opposition to Debtor's motion for reconsideration pursuant to Fed. R. Bankr. P. 7055(c) (Docket No. 69). The court, on September 9, 2009, granted Debtor's motion for reconsideration of the dismissal order since the same was entered prematurely. The order dismissing the case was vacated and set aside. (Docket No. 70). On October 20, 2009, Creditors jointly filed a motion to stay the pretrial hearing until the court rules on the motion to dismiss (Docket No. 72). Creditors through this motion also requested the court to convert the motion to dismiss to a motion for summary judgment. On October 21, 2009 the court ordered the pretrial hearing scheduled for October 23, 2009 to be continued without a date, pending a decision on Creditors' motion to dismiss (Docket No. 73).

On November 24, 2009 Debtor filed his Motion for Reconsideration and Opposition to Motion to Dismiss and Memorandum of Law (Dockets No. 75 & 76) arguing the following: (i) the motion to dismiss should not be granted without a hearing since Debtor should be given a full and fair opportunity to be heard pursuant to 11 U.S.C. §§707(a), 102(1) of the Bankruptcy Code and P.R.

LBR 9013-1(d); (ii) Creditors have not offered any evidence whatsoever in support of their motion to dismiss based on bad faith pursuant to 11 U.S.C. §707(a) of the Bankruptcy Code; (iii) the movant bears the burden for establishing that there is 'cause' for dismissal pursuant to 11 U.S.C. §707(a) of the Bankruptcy Code; (iv) a motion to dismiss which is devoid of any evidence whatsoever but relies on unspecific allegations of fraud and innuendos fails to establish "cause" pursuant to 11 U.S.C. §707(a) of the Bankruptcy Code; (v) "...Debtor respectfully submits that any perceived failure to respond to the Motion to Dismiss with specific facts in evidence should not provide a basis for the Court to grant the motion, and most certainly should not justify doing so without a hearing" (Docket No. 76, p. 12); and (vi) the motion to dismiss under Section 707(a) is an untimely Section 707(b)(3)(A) motion in disguise. On December 21, 2009, [D]r. López, Mrs. Benítez and [Dr.] Delgado jointly filed their reply to the opposition to the motion to dismiss (Docket No. 80) by which they present transcribed portions of the 341 creditor's meeting, Debtor's answer to interrogatories and Debtor's deposition in which he acknowledged having received certain artworks from [Dr.] López, Mrs. Benítez and [Dr.] Delgado in consignment and selling the same to third parties and paying other debts with the proceeds from the artworks but never remitting the proceeds from such artworks to the consignors. Mr. Corredera in his opposition to the motion for reconsideration argues the following: (i) "[n]either 11 U.S.C. §707(a) nor LBR 9013-1(d) require that an actual hearing be held, unless a party in interest requests such an actual hearing" (Docket No. 83, paragraph 5); (ii) "...Debtor's motion for reconsideration of the order dismissing the case nor in Debtor's opposition to the Motion to Dismiss did Debtor request that an actual hearing be held as to the Motion to Dismiss" (Docket No. 83, paragraph 6); and (iii) Debtor's lack of good faith pursuant to Section 707(a) consisted in misappropriating the artworks that had been given to him on consignment for sale and using the proceeds of the consigned artworks to pay other debts and thus, failing to remit the proceeds from these artworks to the consignors.

On March 15, 2010, the court rendered its Opinion and Order, In re Rosado, 2010 WL 1005190 (Bankr. D. P.R. 2010), denying Debtor's Motion for Reconsideration, and finding that Debtor is entitled to a an evidentiary hearing pursuant to Sections 707(a) and 102(1)(A) of the Bankruptcy Code to consider Creditors' motion to dismiss based on their allegation that Debtor filed

his bankruptcy petition in bad faith (Docket No. 84). On March 29, 2010, Debtor filed notice of appeal and motion for leave to appeal (Docket Nos. 89 & 90) this court's Opinion and Order rendered on March 15, 2010 (Docket No. 84). On April 22, 2010, the Bankruptcy Appellate Panel for the First Circuit issued a Judgment dismissing the appeal and denied the motion for leave to appeal (Docket Nos. 93 & 96)

On May 28, 2010, Debtor filed its proposed findings of facts and conclusions of law (Docket No. 98). On May 30, 2010 Debtor supplemented its proposed findings of facts and conclusions of law (Docket No. 99) and subsequently, on June 4, 2010 he amended his proposed findings of fact (Docket No. 103). Debtor's proposed conclusions of law or legal arguments revolve mainly around two (2) core issues, namely (i) bad faith does not constitute cause to dismiss under Section 707(a), and if it were to constitute cause it would be limited to cases in which egregious behavior was present; and (ii) the motion to dismiss should have been filed under the more specific bad faith provision of Section 707(b)(3)(A) within the sixty (60) day limitation from the date first set for the 341 meeting of creditors. Debtor's conclusions of law strictly adhere to the legal analysis of the Sixth and Ninth Circuits and the two (2) opinions penned by the Honorable Judge Joan N. Feeney, (See In re Linehan, 326 B.R. 474 (Bankr. D. Mass. 2005); In re Pina, 363 B.R. 314 (Bankr. D. Mass. 2007)). On June 1, 2010, Dr. López, Mrs. Benítez and Dr. Delgado filed their proposed findings of facts and conclusions of law (Docket No. 100). Mr. Corredera filed his proposed findings of fact and conclusions of law on June 1, 2010 (Docket No. 101). Creditors legal arguments are the following: (i) bad faith constitutes sufficient cause to dismiss under Section 707(a) in conformity with the decisions that have been rendered by the Third and Six Circuits; and (ii) Section 707(b) is inapplicable to the instant case because the claims listed in the bankruptcy petition are primarily business debts.

The Creditors and Debtor's proposed findings of facts correspond primarily to docket activity and to documents that are on the record (included as part of the docket). The material facts which are in controversy are those particularly related to bad faith through Debtor's actions. The purpose of the evidentiary hearing held on June 8, 2010 was precisely to ascertain the bad faith issue, namely, whether Debtor filed his Chapter 7 bankruptcy petition in bad faith, which is a fact intensive process.

Testimonial Evidence

The first witness was Dr. López, a retired medical professor who currently has his own private practice. Dr. López testified that he first met Mr. Alegre through one of his patients on August 23, 2006 when he and his wife visited Galería Ridel, located on Américo Miranda Avenue, and brought an Arana oil painting to inquire as to whether it was worthwhile to sell the same. Dr. López told Mr. Alegre the amount of money he had paid for said painting and that he wanted a profit of $10,000.00 from the sale of the painting, regardless of the painting's actual selling price. Dr. López handed the Arana oil painting to Mr. Alegre on consignment, without relinquishing title of the same. Mr. Alegre told him that he would sell the same within four (4) to six (6) weeks. Dr. López called Mr. Alegre 3-6 months (approximately February 2007) after handing over the Arana painting and Mr. Alegre told him that it had been sold through one of his promoters (sellers) and that he would maybe pay him next week. Sometime after February 2007, Mr. López called Mr. Alegre again to inquire about his $10,000.00 payment and the latter told him to pass by the gallery next Monday to get a partial payment. Dr. López refused the partial payment. Dr. López stated that a specific time frame within which to sell the painting or a prohibition as to partial payments was never put in writing. Dr. López never authorized Mr. Alegre to use the proceeds from the sale of the Arana painting for any other purpose but to remit the corresponding proceeds to him. This had been the only (business) transaction that he had had with Mr. Alegre and that he had no prior knowledge of how Mr. Ridel did business or the financial condition of Galeria Ridel at the time of the bankruptcy filing.

The second witness to testify was Mrs. Benítez, coordinator of the Bayamón Art Museum. Mrs. Benítez testified that she has known Mr. Alegre since 1997-1998, when he was doing business with her late husband, the painter (artist) Andy Bueso and also with Andrés Bueso, the father of Andy Bueso, who would give Mr. Alegre their paintings on consignment. Mrs. Benítez testified that Mr. Alegre sold many paintings of both Andy Bueso and of his father (Andrés Bueso) at his gallery. Mr. Alegre has not paid her for three (3) paintings and two (2) silkscreens of Andy Bueso. The three (3) paintings and their agreed-upon values are the following: (i) "Sobreviviente" valued at $15,000.00; (ii) "Bajo los Arcos" valued at $10,000.00; and (iii) "Baile sobre San Juan" valued at $8,000.00. The two (2) silkscreens and their agreed-upon values are the following: (i) "Corazones Ecuestres" valued

6

at $1,200.00; and (ii) "La Familia" valued at $750.00. Mrs. Benítez presented as evidence, Exhibits 2A, 2B and 2C. Exhibit 2A is a handwritten document which has Bueso's last name and the following address as letterhead: 301 Howard, University Gardens, Rio Piedras, Puerto Rico USA 00927. The document is addressed to Ridel Gallery, Calle 32 #310, Villa Nevárez, Rio Piedras, PR 00927. The document lists four (4) artworks of Andy Bueso, which are the following: (i) "Strippers" 1992, acrylic on canvas valued at $10,000.00; (ii) "Baile sobre San Juan" 1989, acrylic on masonite valued at $8,000.00; (iii) "Los Fuegos del Amor" 1989, acrylic on masonite valued at $10,000.00; and (iv) "Bajo los Arcos" 1989, mixed media on masonite valued at $10,000.00. The document on which the information of the painting Strippers was written has a note on the side which states that such painting was paid in full. In the same manner, the same document on which the information of the painting "Los Fuegos del Amor" was written has a side note which states that such painting was sold. It has the figure $6,500.00 and it states that $4,500.00 was paid. This document is signed by Ridel Fernandez and has the initials "TB" ("Teresa Bueso"). The other two (2) paintings do not have any side notes indicative of their status. Exhibit 2A does not have a date and Mrs. Benítez testified that the same was drafted before July 12, 2006. Exhibit 2B is a handwritten document dated March 22, 2000 which has the last name of Bueso as its letterhead and is addressed to Galeria Ridel and lists the following silkscreens on consignment; (i) "Corazones Ecuestres" valued at $1,200.00; (ii) "La Familia" valued at $750.00. This document is signed by Ridel Fernandez and has the initials "TBB" ("Teresa Benítez Bueso). Exhibit 2C is a handwritten document which has Bueso's last name and the following address as letterhead: 301 Howard, University Gardens, Rio Piedras, Puerto Rico, PR 00927. The document dated July 12, 2006 is addressed to Ridel Gallery and lists two (2) paintings on consignment by artist Andy Bueso. The paintings listed are the following: (1) "Una y Otra" 1991, acrylic on masonite valued at $18,000.00; and (2) "Sobreviviente" 1989, acrylic on masonite valued at $15,000.00. There is an X written next to the name of the painting "Una y Otra" on said document. At the bottom of the document it states that Mr. Ridel will return the paintings if the same are not sold within 4 weeks of the above date. This document is signed by Ridel Fernández. (Docket Nos. 111 & 121).

Mrs. Benítez has been in the art business since 1981. She stated that it was customary for

7

artworks to be held on consignment, and the artist always keeps title of the same until they are sold. Mrs. Benítez further testified that the terms of the transaction were always that once the same were sold, Mr. Alegre would keep 40% of the sale prince and Mrs. Benítez would keep 60% of the sale price. Mrs. Benítez telephoned Mr. Alegre on a weekly basis, as part of her business, to inquire the status of the five (5) artworks and also to request that the same be returned to her. Mr. Ridel would reply that he was working on selling the artworks and that he would pay Mrs. Benítez her 60%.

The third witness to testify was Dr. Delgado, an artist (painter) and retired professor of the University of Puerto Rico. Dr. Delgado testified that he has been an artist/painter for seventy (70) years and that he has sold his artwork in the past. Dr. Delgado testified that he met Mr. Alegre only on one (1) occasion in which Mr. Alegre contacted him about a particular artwork which Mr. Alegre wanted to sell and that they reached a good faith agreement in the year 2005. Dr. Delgado handed Mr. Alegre the painting titled, "San Francisco acompañado de cuatro cotorras Puertorriqueñas" on July 11, 2005 and this occurred in his art studio located at 971 Américo Miranda Avenue, Reparto Metropolitano. Dr. Delgado gave Mr. Alegre the above referenced painting on consignment, as part of the agreement it was established that the selling price would be $25,000.00, and that Mr. Alegre would keep 10% of the selling price. Dr. Delgado never consented for Mr. Alegre to keep any of the proceeds of said painting. Mr. Alegre spontaneously returned the painting at the end of the year 2006 because he had been unable to sell the same.

However, Dr. Delgado in the beginning of the year 2007, was contacted by Mr. Alegre once again alleging that he had a good opportunity to sell the painting. He accepted once again to give the painting on consignment with the same terms as before (year 2005), since Mr. Alegre had acted properly in the past, meaning that he had returned the painting when he had been unable to sell the same. Dr. Delgado on various occasions requested Mr. Alegre to return the painting since he had been unable to sell the same, but Mr. Alegre always gave him an excuse.

Dr. Delgado ran into Mr. Alegre at the Luis Muñoz International Airport sometime in the year 2008 and Mr. Alegre effusively told him that he would pass by the next day with the cash from the painting. He also testified that to this day he has not received the cash or the painting. Lastly, Dr. Delgado stated that when he met Mr. Alegre at the airport in the year 2008 he ignored the fact that

Mr. Alegre had filed for bankruptcy at the time since he believed the bankruptcy occurred later.

The fourth witness to testify was Mr. Corredera, business owner of the gallery Art & Frames Express and a painter and sculptor. He testified that he is also known as "Pablo Corpa" and "P. Corpa." Mr. Corredera testified that he first met Mr. Alegre when he visited his gallery and bought one (1) piece of art. Some time later, Mr. Alegre visited his gallery and told him that he had an art gallery in Villa Nevarez and had clients which he could sell certain artworks that were in Mr. Corredera's gallery. Mr. Alegre inquired about the prices of certain artworks so that he may take the same on consignment, since that is the way galleries operate. Mr. Corredera testified that galleries operate on consignment and that the same is based on either a fixed liquidation price or on a commission from the sales price. Mr. Corredera testified that the consignment agreement he had with Mr. Alegre was always based on a fixed liquidation price, meaning that Mr. Alegre would be allowed to keep the difference between the fixed liquidation price and the selling price. Mr. Corredera never surrendered (relinquished) the titles of the artworks unless the same had been paid.

He has been doing business with Mr. Alegre since the year 2004. Mr. Alegre almost always made partial payments, but since he needed the money he would allow him to take the artworks. It was stipulated that during the years 2004 and 2005 Mr. Corredera received over $150,000.00 from the artworks sold on consignment by Mr. Alegre paid more than half of the time for the artworks he took on consignment.

Mr. Corredera further testified that Mr. Alegre has failed to pay him or return the following artworks that were given to him on consignment: (i) artwork ("La Pareja") by Servando Cabrera Moreno for an agreed fixed liquidation price of $6,500.00; (ii) three (3) sculptures by Wichy Torres for an agreed fixed liquidation price of $10,500.00; (iii) Two (2) bronze sculptures of Roman soldiers for an agreed fixed liquidation price of $8,000.00 which he went to pick up with his employee because he had them sold. However, Mr. Corredera testified that Mr. Alegre begged him to leave the sculptures because he had a buyer for them which would bring the money for the sculptures that afternoon, and that he would in turn pay Mr. Corredera the next day; (iv) a large painting by Amelia Pelaez which had an agreed fixed liquidation price of $23,000.00 but Mr. Alegre gave Mr. Corredera a painting valued at $10,000.00 as a credit, thus the outstanding debt balance is $13,000.00 for this

painting; (v) two (2) sculptures titled, "Taína" and "De la Cruz" for an agreed liquidation price of $11,000.00. Mr. Corredera also testified that the only two (2) artworks that Mr. Alegre returned and thus is not claiming were "La muerte del Ché" and "El Gallo." However, Mr. Corredera requested, to no avail, Mr. Alegre to return the artworks that were on consignment and had not been paid. He never authorized Mr. Alegre to use the proceeds from the sale of the artworks.

The last witness to testify was Mr. Alegre. Debtor's counsel stipulated and the court took judicial notice that on debtor's bankruptcy petition under the line item "Nature of Debts" there is a check next to the box which has the corresponding language, "[d]ebts are primarily consumer debts, defined in 11 U.S.C. §101(8) as 'incurred by an individual primarily for a personal, family, or household purpose.'" Debtor's counsel also stipulated that the voluntary petition has Debtor's corresponding electronic signature following the under penalty of perjury statement that the information debtor has provided is true and correct. Debtor testified that everything which is included in the bankruptcy petition is correct to the best of his knowledge. Mr. Alegre also testified that certain debts which were included in Schedule F-Creditors Holding Unsecured NonPriority Claims, as personal debts were incurred as part of the business operations of the gallery for artworks which he failed to pay for. None of these claims are marked in the bankruptcy petition as being contingent, liquidated or disputed.

The following is the corresponding list of creditors and the amounts of the claim listed on Schedule F: (1) Alfredo Martinez, in the amount of $25,000.00; (2) Don Celedonio Corredera Pablos, in the amount of $68,400.00; (3) Dr. Osiris Delgado, in the amount of $25,000.00; (4) Dr. Pablo Lopez Baez, in the amount of $11,000.00; (5) Emma Teresa Benitez, in the amount of $27,000.00; (6) Juan Botello, in the amount of $22,000.00; (7) Maria Rechany, in the amount of $30,000.00; (8) Sr. Rafael Anglada, in the amount of $5,000.00; (9) Victor Ortiz Jr., in the amount of $900.00; and (10) Walter Otero, in the amount of $14,000.00. Mr. Alegre testified that all of the above referenced debts were listed as personal debts because sometime during May and July Dr. Osiris Delgado, Mrs. Emma Benítez, Pablo Corpa, and Dr. Pablo Lopez filed collection of monies lawsuits against the gallery and in his individual capacity.

Mr. Alegre testified that he had always conducted business as a corporation and that from the

years 1989 - 2006 he had never had a problem paying his creditors. Since 1989 if he was unable to sell a piece of art he would return the same. He closed the gallery and the same had been finalized with the Puerto Rico Department of State. He had filed for bankruptcy due to the general catastrophic economic condition which had caused a decline in the art sales and many of the customers that owed the business were not making payments. Mr. Alegre further stated that during the beginning of the year 2007, Mr. Luis Pérez, a seller of the art gallery and the person in charge of collections, passed away and he had a huge amount of the gallery's accounts receivables which amounted to more than $100,000.00. He also testified that Luis Pérez's family did not provide him with his computer or any of the documents and thus, he was unable to follow up on the accounts receivables and collect on the same. However, Mr. Alegre's Statement of Financial Affairs ("SOFA") reflects low income levels from the operation of Galeria Ridel and exhibitions out of the gallery since the year 2004. Mr. Alegre's income was $3,724 for the year 2004; $5,222 for the year 2005; $2,786 for the year 2006 and $10,500 for the year 2007. In addition, Debtor's SOFA reflects the highest income level in the year 2007 which is more than twice his income from the year 2005. Thus, his schedules and SOFA contradict his oral testimony.

Mr. Alegre admitted that he sold the artworks of the Creditors who are present today (Mr. Corredera, Dr. López, Mrs. Benítez and Dr. Delgado) and did not pay the Creditors for the same, since the proceeds were used to pay other obligations of the gallery. He also admitted that all the monies from the sale of artworks went into a common fund which was used to pay all the artists. Debtor also testified that he told Dr. Delgado that he had sold his artwork and that he would bring him the money.

Discussion

After considering the documentary evidence and the testimonies of the five (5) witnesses, this court concludes that Debtor had valid verbal consignment agreements with all Creditors. This is the customary manner in which galleries and artists (or owners of artworks) do business (carry on their business transactions) in Puerto Rico. The terms of the consignment agreement varied somewhat with respect to the commission percentage (i.e. Mrs. Benítez would give Mr. Alegre 40% of the agreed upon selling price whereas Dr. Delgado would give him 10% of the selling price). Also, the

11

consignment agreement could be based on a fixed liquidation price instead of a commission percentage based on the selling price, such as in the case of Dr. López and Mr. Corredera. This court notes that the only creditor who had business dealings which were somewhat different was Mr. Corredera who requested guaranty checks from Mr. Alegre whenever he took works of art from his gallery. However, the guaranty checks were not cashed since it was the customary operating procedure for Mr. Alegre to pay him in cash and for Mr. Corredera to return him the guaranty check.

The court also finds that the Creditors never relinquished their titles (ownership) of their artworks. The same were never purchased by Debtor for resale and if Debtor was unable to sell the same he had to return the artworks to the Creditors. It is an uncontested fact that Debtor owes monies to these Creditors for their artworks, which he never paid for nor returned to Creditors if he was unable to sell the same. It is also an uncontested fact that Debtor sold Creditors' artworks and used the proceeds from the sale of these artworks to allegedly pay obligations of the gallery since the funds received from the operation of the gallery were handled as part of a common fund and not as a specific account payable owed to a particular creditor. The court notes that there was a lack of accountability of the proceeds received from the operations of the gallery. Moreover, it is clear from Creditors' testimony that they never authorized Mr. Alegre to use the proceeds from the sale of their artworks for any other purpose but to remit the corresponding proceeds to them once the artworks had been sold.

This court further finds that Mr. Alegre's bankruptcy petition as originally filed consists primarily of debts related to the business operations of the gallery which were incurred during the years 2005 and 2006. Debtor's total liabilities per his bankruptcy schedules amount to $242,678.22 of which only $14,378.22 or a *de minimis* 5.92% constitute alleged personal debts. Debtor testified that the various debts which amount to $228,300 (or 94.08% of all debts included in the bankruptcy petition) included in his bankruptcy petition were incurred in the operation of the business, namely works of art which he sold to third parties and never paid to the consignors. The court notes that amongst Mr. Alegre's personal debts there is a debt for $1,760.00 to the Puerto Rico Department of State for the years 1990-2005 and an advertisement debt incurred in the year 2006 for $1,350.00 which might have been incurred for the operation of Galeria Ridel. Thus, substantially all of Mr.

Alegre's debts are of a business nature, and are not consumer debts.

Applicable Law and Analysis

*Dismissal pursuant to 11 U.S.C. §§707(b)(1) & (3)- Primarily Consumer Debts*

Section 707(b)(1) provides in part that, "[a]fter notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts... if [the court] finds that the granting of relief would be an abuse of the provisions of this title." 11 U.S.C. §707(b)(1). "Abuse" is determined under 11 U.S.C. § 707(b)(2) or 11 U.S.C. §707(b)(3). Morse v. Rudler (In re Rudler), 388 B.R. 433, 437 (B.A.P. 1st Cir. 2008). The term "consumer debt" is defined as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. §101(8). The term "primarily" indicates that consumer debts must be a significant component of the indebtedness. See Alan N. Resnick & Henry J. Sommer, 6 Collier on Bankruptcy ¶707.04[3][d] (15th ed. rev. 2010). A debt incurred with a profit motive clearly falls outside the definition of "consumer debt."

This court concludes that Section 707(b)(1) is inapplicable to the instant case because Mr. Alegre's debts as listed in his bankruptcy petition are primarily business debts since the same were incurred in the operation of a business, namely Debtor's gallery. Mr. Alegre testified that the following claims which were scheduled on Schedule F-Creditors Holding Unsecured NonPriority Claims were incurred as part of the business operations of the gallery: (1) Alfredo Martinez, claim listed in the amount of $25,000.00; (2) Don Celedonio Corredera Pablos, claim listed in the amount of $68,400.00; (3) Dr. Osiris Delgado, claim listed in the amount of $25,000.00; (4) Dr. Pablo Lopez Baez, claim listed in the amount of $11,000.00; (5) Emma Teresa Benitez, claim listed in the amount of $27,000.00; (6) Juan Botello, claim listed in the amount of $22,000.00; (7) Maria Rechany, claim listed in the amount of $30,000.00; (8) Sr. Rafael Anglada, claim listed in the amount of $5,000.00; (9) Victor Ortiz Jr., claim listed in the amount of $900.00; and (10) Walter Otero, claim listed in the amount of $14,000.00. The summation of these ten (10) claims amounts to $228,300.00. Debtor in the Summary of Schedules that forms part of his chapter 7 bankruptcy petition listed the total amount of his liabilities by category, which at the time reflected the following: (1) Schedule E- Creditors

13

Holding Unsecured Priority Claims listed a total amount of $2,786.02; and (2) Schedule F- Creditors Holding Unsecured Nonpriority Claims listed a total amount of $239,382.20. Debtor's total liabilities in his bankruptcy petition amounts to $242,678.22 of which $228,300.00 (94.08%) were incurred as part of the operation of his business gallery, thus the claims listed by Debtor are primarily business debts, not consumer debts. Thus, the information provided by Debtor in his bankruptcy petition regarding the nature of the debts was grossly incorrect and false. His debts are primarily business debts incurred in the years 2005 and 2006 as part of the operation of a gallery which was structured as a corporation until the year 2007 (Docket No. 1, Statement of Financial Affairs, line item #18). The Debtor testified that he listed Creditors' claims as personal debts because they had filed collection of monies lawsuits in state court against Galeria Ridel, Inc. and against him in his personal capacity. However, the state court lawsuits do not transform the nature of the debt nor does Debtor testimony help explain the reason as to why the other business debts pertaining to other creditors which had not filed state court lawsuits were also characterized as "personal debts" or "personal loans" in Debtor's bankruptcy petition.

*Bad Faith as Cause under 11 U.S.C. §707(a)*

"Section 707(a) of the Bankruptcy Code provides in part that, '[t]he court may dismiss a case under this chapter only after notice and a hearing and only for cause,' and provides three (3) non-exclusive examples of 'cause' warranting dismissal. 11 U.S.C. §707(a). The Bankruptcy Code is silent as to what constitutes 'cause' under Section 707(a). The examples provided in Section 707(a) of the Bankruptcy Code are not exhaustive of what may constitute 'cause' for dismissal in a chapter 7 case. See In re Zick, 931 F. 2d 1124, 1126 (6th Cir. 1991); In re Huckfeldt, 39 F. 3d 829, 831 (8th Cir. 1994). There is currently a split amongst the courts on the issue of whether bad faith constitutes 'cause' for dismissal of a chapter 7 case pursuant to Section 707(a). The Third and Sixth Circuits have held that bad faith is a valid cause for dismissal of a chapter 7 case under §707(a). See Industrial Ins. Servs., Inc. v. Zick (In re Zick), 931 F. 2d 1124, 1127 (6th Cir. 1991); In re Tamecki, 229 F. 3d 205, 207 (3rd Cir. 2000); Perlin v. Hitachi Capital America Corp., 497 F. 3d 364 (3rd Cir. 2007). Both the Third and Sixth Circuits employ narrowly bad faith as 'cause' for dismissal of a chapter 7 case and limit its scope to 'egregious cases that entail concealed or misrepresented assets and/or sources of

14

income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence.'In re Zick, 931 F. 2d at 1129." In re Rosado, 2010 WL 1005190.

The Seventh Circuit in the case of United States Trustee v. Pedigo (In re Pedigo), 2005 U.S. App. Lexis 18769 (7th Cir. 2005) dismissed the appeal for lack of jurisdiction and for the same being premature because the district court had remanded this case to the bankruptcy court and had instructed the same to include bad faith as an element of Section 707(a) to determine the United States Trustee's motion to dismiss. "The Eight and Ninth Circuits have taken the opposite viewpoint and held that bad faith generally does not constitute 'cause' under Section 707(a). See In re Padilla, 222 F. 3d 1184, 1191 (9th Cir. 2000); In re Huckfeldt, 39 F. 3d at 832 citing In re Khan, 172 B.R. 613 (Bankr. D. Minn. 1994) ('...bad faith under §707(a) be limited to extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a 'scorched earth' tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction.')." In re Rosado, 2010 WL 1005190.

"There is no controlling precedent from the First Circuit Court of Appeals. However, it must be noted that the Bankruptcy Court of Massachusetts has addressed this particular issue and has aligned itself with the reasoning employed by the Eighth and Ninth Circuits. See In re Linehan, 326 B.R. 474 (Bankr. D. Mass. 2005); In re Pina, 363 B.R. 314 (Bankr. D. Mass. 2007). The Bankruptcy Court of New Hampshire contrary to the Bankruptcy Court of Massachusetts has held that bad faith constitutes 'cause' for a chapter 7 dismissal and that the factors included in Cabral v. Shamban (In re Cabral), 285 B.R. 563, 572 (B.A.P. 1st Cir. 2002)[1] should be employed to determine the same. In re Marsico, 2004 B.R. 1 (Bankr. D.N.H. 2004)." Id.

"Notwithstanding, the split amongst the courts, chapter 7 dismissals based on bad faith are fact intensive and fact specific and the moving party has the burden of proving that there is 'cause'

---

[1]The following are the four (4) factors the court must consider: (1) whether the debtor misrepresented facts in his petition, unfairly manipulated the Bankruptcy Code, or otherwise filed his bankruptcy petition in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present. These factors were used to reconvert a chapter 7 case to a chapter 13 case.

15

for such dismissal. See In re Romany, 2006 Bankr. LEXIS 3807 (Bankr. D.P.R. 2006)." Id. Moreover, dismissals based on bad faith must be reviewed on a "case by case" basis and under a stringent standard to adequately determine if "an abuse constituting cause has occurred." Owens v. Owens, 155 Fed. Appx. 42, 45 (2d Cir. N.Y. 2005).

In In re Lombardo, 370 B.R. 506, 512 (Bankr. E.D.N.Y. 2007), the court established a non-exclusive list of fourteen (14) factors a court should consider as part of its totality of the circumstances analysis in determining bad faith. This court adopts the *Lombardo* analysis. Bad faith must be determined pursuant to the totality of the circumstances. Any set factors depend on the case circumstances. The fourteen (14) factors in *Lombardo* include: "(1) the debtor's manipulations having the effect of frustrating one particular creditor; (2) the absence of an attempt to pay creditors; (3) the debtor's failure to make significant lifestyle changes; (4) the debtor has sufficient resources to pay a substantial portion of debts; (5) the debtor inflates expenses to disguise financial well-being; (6) the debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors; [7] the debtor reduced his creditors to a single creditor in the months prior to the filing of the petition; [8] the debtor filed in response to a judgment, pending litigation, or collection action, and there is an intent to avoid a large single debt; [9] the unfairness of the use of Chapter 7; [10] the debtor transferred assets; [11] the debtor is paying debts to insiders; [12] the debtor failed to make candid and full disclosure; [13] the debts are modest in relation to assets and income; and [14] there are multiple bankruptcy filings or other procedural gymnastics." Id. at 512; In re Aiello, 428 B.R. 296, 302 (Bankr. E.D.N.Y. 2010); In re Scott, 2010 WL 3087507 (Bankr. E.D.N.C. 2010). The presence of various of the *Lombardo* factors may be indicative of bad faith. In re Scott, 2010 WL 3087507("The presence of a single factor indicative of the debtor's bad faith in filing will not typically equate to a finding of cause for dismissal of a Chapter 7 petition; however, the presence of multiple factors may suffice.").

This court finds that the facts and circumstances in the instant case show that there are various factors which determine bad faith in filing the petition. The first factor which is present is that Debtor failed to make candid and full disclosure in his Chapter 7 bankruptcy petition. This is evidenced by the fact that Debtor in his individual bankruptcy petition misrepresented the true nature of a

substantial amount (94.08% of all debts included in the bankruptcy petition) of his "personal" debts. Mr. Alegre testified that the same were incurred in the operation of the business, namely for failure to remit the proceeds generated from the sale of consigned artworks. The second factor which is present is that Debtor filed for bankruptcy in response to a judgment, pending litigation, or collection action, and there is an intent to avoid a large single debt. At the time of the bankruptcy filing, Mr. Alegre had been sued in four (4) separate state court collection of monies complaints filed individually by the Creditors in the year 2007. According to line item four (4) of Debtor's Statement of Financial Affairs, a judgment was rendered in the case of Pablo Lopez Baez, Cristine Wechgeler vs. Ridel Fernandez H/N/C/ Galeria Ridel K1CD2007-0083. The status of the other three (3) cases had only progressed to the service of process stage, namely; Don Celedonio Corredera Pablos vs. Galeria Ridel, Inc. and Ridel Fernandez KCD2007-0809; Emma Teresa vs. Ridel Fernandez KCD2007-11424; and Dr. Osiris Delgado vs. Ridel Fernandez and Galeria Ridel KCD2007-1759. Subsequently, Mr. Alegre filed for bankruptcy on October 9, 2007. All four (4) collection of monies actions involved artwork that had been given to Mr. Alegre on consignment but the artworks or the monies from the sale of the same were never remitted to the Creditors. The debts of these four (4) Creditors as originally listed in Debtor's Schedule F(Creditors Holding Unsecured Nonpriority Claims), amount to $131,400.00, which is 54.15% of Debtor's total debt as per the Schedules.

The third and fourth factors this court finds are present and are somewhat interrelated are Debtor's unfair use of Chapter 7 and his misuse of employing the protections of the Bankruptcy Code to the conscious detriment of the creditors that provided Debtor with artworks on consignment. The evidence shows that 94.08% of the debts originally listed by Debtor are of the same nature; namely debts that arose because Debtor sold creditors' paintings but failed to return the artwork or remit the proceeds to the owner of said paintings. Moreover, Debtor's testimony regarding the manner in which his business operations were conducted, particularly the fact that the proceeds from the artworks were treated as part of a common fund, reflects a complete disregard towards his obligations with his creditors and his duty to follow proper accounting practices and keep accurate business records. This court also finds that Mr. Alegre consciously neglected his duty to pay his creditors and to repeatedly and without authorization used the proceeds from the sale of their artworks to allegedly pay other

obligations of Galeria Ridel, Inc., thus commingling the proceeds from the sale of artworks with the operational funds of the gallery. Based upon the facts and circumstances of the instant case, this court finds that Debtor's misconduct as evidenced by his own testimony and actions was misleading towards his creditors and that he has misused the protections under Chapter 7 of the Bankruptcy Code for his own benefit to avoid liability for profits generated by Galeria Ridel, Inc. These profits originated from the sale of artworks on consignment which were then used to satisfy the gallery's operations, but said never belonged to the gallery or to Mr. Alegre.

Conclusion

For all of the foregoing reasons, this court concludes that the totality of circumstances evince Debtor's bad faith in filing the Chapter 7 bankruptcy petition, and warrants the dismissal of the petition for "cause" under Section 707(a) of the Bankruptcy Code.

In view of the foregoing, Creditors' motion to dismiss is hereby GRANTED.

SO ORDERED.

Judgment shall be entered accordingly.

In San Juan, Puerto Rico, this 30th day of November 2010.

Enrique S. Lamoutte
United States Bankruptcy Court